```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

Minnesota Life Insurance             :
Company,
      Plaintiff,                   :

   v.                                 :       Case No. 2:16-cv-149

                                                   :
Judy Rings, et al.,                          Magistrate Judge Kemp

      Defendants.                   :

## OPINION AND ORDER

    This insurance dispute arose, unfortunately, out of a murder-suicide that took place on September 2, 2015.  As the undisputed facts of the case show, on that day, David Rings shot his wife Teresa and then shot himself.  Mr. Rings had life insurance through his employer, Abbot Laboratories.  He had named his wife as the sole beneficiary, but the policies (there are two of them with identical terms) contain language which specifies when a named beneficiary who dies at roughly the same time as the policyholder is still entitled to the proceeds or if someone else - for example, the policyholder's parent - is to receive the money instead.  That is the crux of the parties' legal dispute.  For the following reasons, the Court concludes that Judy Rings, David Rings' mother, is the proper beneficiary and is entitled to be paid the life insurance proceeds at issue.

### I.  Procedural History

    The Court will begin with the pertinent procedural details.  Minnesota Life Insurance Company, the issuer of the policies in question, filed this interpleader action pursuant to Federal Rule of Civil Procedure 22.  Minnesota Life is holding the proceeds of the two insurance policies at issue, a sum of $294,000 plus

interest, until the Court decides who is entitled to it.  The two competing claimants are Teresa Lee Rings' Estate (her son, Chase Lee, being the sole beneficiary of the estate) and Judy Rings, David Rings' sole surviving parent.

Minnesota Life moved for leave to deposit funds in an interest-bearing account, for an injunction, and for its dismissal from this action.  The two competing claimants have filed cross-motions for summary judgment.

## II.  The Undisputed Facts

The cross-motions for summary judgment are based on a set of undisputed facts, and the parties agree that the proper interpretation of the policy language is a pure question of law. Here are the facts they agree on.

> 1. Defendant Judy Rings is David Lee Rings' biological mother.
>
> 2. At all times relevant to this case, David's biological father was and is dead.
>
> 3. David and Teresa Lee Rings married on October 19, 2009 and were still married on September 2, 2015.
>
> 4. Teresa was Defendant Chase Lee's biological mother.
>
> 5. Chase is David's stepson; David was not Chase's biological or legally-adoptive father.
>
> 6. David never had any biological or legally adopted children.
>
> 7. At approximately 6:40pm on September 2, 2015, David shot Teresa with a firearm. Teresa was hit six times and suffered bullet wounds to her finger, hip, buttocks, back, chin and neck. Teresa died from her injuries some time between 6:40pm and 7:05pm.
>
> 8. Also at approximately 6:40pm on September 2, 2015, David shot himself with a firearm.  David was hit one time and lost a significant amount of brain matter from the gunshot wound. David also died from his injuries

some time between 6:40pm and 7:05pm.

9. Both David and Teresa died on September 2, 2015; the cause of death for each was injury resulting from the gunshot wounds inflicted by David.

10. Between David and Teresa, it is unknown and probably unknowable who died first. They both died no more than twenty-five minutes of the other. The parties agree that they are currently not aware of facts (other than Stipulations 6. and 7. above) which indicate who, if either, died first but do not discount the possibility that such evidence could hereafter be discovered.

11. On September 2, 2015, there were in force two life insurance policies ("the Policy") issued by Plaintiff. True and accurate copies of the written versions of the Policy are attached to the complaint in this case as Exhibits A and B.

12. Plaintiff originally issued the Policy as part of and in association with the benefits package which David received as the result of his employment with Abbott Laboratories.

13. David's life is the life which the Policy insured.

14. At some point in time before September 2, 2015, David designated Teresa as the only beneficiary under the Policy. During their marriage, David did not designate any beneficiary other than his wife, Teresa.

15. David and Teresa were both dead when medics entered the house at approximately 7:05pm.

16. Time of death for both David and Teresa reflects the time that medics were able to inspect the bodies and confirm that both were dead.

17. Teresa was alive on September 2, 2015.

The claimants also agree that the outcome of this case depends on the interpretation of certain language found in both insurance policies, and agree that this is the key provision:

**To whom will we pay the death benefit?**

> We will pay the death benefit to the beneficiary or beneficiaries. A beneficiary is named by you to receive the death benefit to be paid at your death. You may name one or more beneficiaries. You cannot name the policyholder or an associated company of the policyholder as a beneficiary.
>
> You may also choose to name a beneficiary that you cannot change without the beneficiary's consent. This is called an irrevocable beneficiary.
>
> If there is more than one beneficiary, each will receive an equal share, unless you have requested another method in writing.  To receive the death benefit, a beneficiary must be living on the date of your death. In the event a beneficiary is not living on the date of your death, that beneficiary's portion of the death benefit shall be equally distributed to the remaining surviving beneficiaries. In the event of the simultaneous deaths of you and a beneficiary, the death benefit will be paid as if you survived the beneficiary.
>
> If there is no eligible beneficiary, or if the insured does not name one, we will pay the death benefit to:
>
>> (1) the insured's lawful spouse, if living, otherwise:
>> (2) the insured's natural or legally adopted child (children) in equal shares, if living, otherwise;
>> (3) the insured's parents in equal shares, if living, otherwise;
>> (4) the personal representative of the insured's estate.

### III.  Analysis of the Policy

It is not difficult to see that the next-to-the-last paragraph just quoted is the crucial one.  Although the Court will explain each of the claimant's legal position in more detail later, the gist of each can be stated simply.  The Estate points out that Teresa Rings was properly named as a beneficiary, and in order for her (or her estate) to collect the proceeds, it was only necessary that she "be living on the date of [David Rings']

death." She was. Consequently, the money goes to her estate.

Judy Rings, on the other hand, argues that this interpretation completely ignores the last sentence of that paragraph. She says that this is a case of "simultaneous deaths." If that is so, the policy says that the death benefit is to be paid "as if [David Rings] survived [Teresa Rings]" - in other words, to the next person in line. Because David Rings did not name an alternate beneficiary and he had neither a living spouse nor a natural or adopted child, any surviving parent becomes the payee.

### A. Preliminary Issues

Before determining which one of these is the better argument, the Court notes that the claimants have addressed two other issues: (1) does the Uniform Simultaneous Death Act apply here; and (2) does the Ohio Slayer Statute, Ohio Rev. Code 2105.19, apply? The claimants appear to agree that because the life insurance policy addresses the issue of simultaneous deaths, the Uniform Simultaneous Death Act does not apply, so the Court will not discuss it further. That leaves the question of whether the Ohio Slayer Statute has anything to say about who gets the proceeds in this type of situation.

The Court first notes that the statute is, by its terms, inapplicable. It disqualifies only persons convicted of certain crimes (or persons found incompetent to stand trial after having been indicted for such crimes) from profiting from their criminal deeds. However, Ohio common law "provides 'that no one should be allowed to profit from his [or her] own wrongful conduct.'" Prudential Ins. Co. of America v. Blanton, 118 F.Supp.3d 980, 982 (N.D. Ohio 2015), citing Shrader v. Equitable Life Assur. Soc. of U.S., 20 Ohio St.3d 41, 44 (1985). Federal common law appears to endorse the same principle. See, e.g., Metropolitan Life Ins. Co. v. White, 972 F.2d 122 (5th Cir. 1992).

That principle, however, ordinarily is construed to prevent a wrongdoer from collecting the proceeds from a policy which insured the life of the *victim*. It says little to nothing about how a policy on the life of the *wrongdoer* is to be distributed. Courts have rejected the argument that the slayer statutes or the corresponding common law rule extend as far as the only "benefit" which someone like David Rings obtained by killing Teresa - namely, the ability to direct the proceeds of his life insurance policies to the next person in line after Teresa. See, e.g., Caterpillar, Inc. v. Estate of Lacefield-Cole, 520 F.Supp.2d 989 (N.D. Ill. 2007). Ohio law has been interpreted in the same fashion. See Zemski v. Kish, 1992 WL 238638 (Lucas Co. App. Sept. 25, 1992). Consequently, the Court concludes that under either federal or Ohio law, the "slayer principle" does not affect Judy Rings' ability to obtain the proceeds of the policies which insured her son's life.

### B. Analysis of the Policy Language
#### 1. The Legal Standards

The claimants both assert that the interpretation of David Rings' life insurance policy is governed by ERISA. The Court agrees. "When faced with a dispute over the proper beneficiary, ERISA 'supplies the rule of law' for making that determination.'" IBEW Pac. Coast Pension Fund v. Lee, 462 Fed.Appx. 546, 548 (6th Cir. 2012), quoting Metro Life Ins. Co. v. Pressley, 82 F.3d 126, 129-30 (6th Cir. 1996). The statutory language requires an ERISA plan administrator to pay benefits "in accordance with the documents and instruments governing the plan." 29 U.S.C. §1104(a)(1)(D). The Court of Appeals has construed this section as "establish[ing] a clear mandate that plan administrators follow plan documents to determine the designated beneficiary." Metropolitan Life Ins. Co. v. Marsh, 119 F.3d 415, 420 (6th Cir. 1997), citing Pressley, 82 F.3d at 130. "ERISA directs that the

*plan documents* determine the beneficiaries, ..., and repeatedly underscores the primacy of the written plan." Union Sec. Ins. Co. v. Blakeley, 636 F.3d 275, 276 (6th Cir. 2011) (emphasis in original) (citation omitted). Consequently, if the plan document provides "a workable means of identifying beneficiaries" the Court "'need look no further.'" Id., quoting McMillan v. Parrot, 913 F.2d 310, 312 (6th Cir. 1990). This is so whether the court can find "a workable means of identifying beneficiaries in the plan document ... in the general definition section or in the plan as a whole." Id., quoting Mitzel v. Anthem Life Ins. Co., 351 Fed. Appx. 74, 90 (6th Cir. 2009).

"Under federal common law, 'ERISA plans, like contracts, are to be construed as a whole.'" Mitzel, quoting Alexander v. Primerica Holdings, Inc., 967 F.2d 90, 93 (3d Cir. 1992). "[A] plan's provisions must be interpreted 'according to their plain meaning, in an ordinary and popular sense.'" Caldwell v PNC Financial Services Group, Inc., 835 F.Supp.2d 510, 522 (S.D. Ohio 2011), quoting Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556 (6th Cir. 1998). In applying a plain meaning analysis, courts are required to give effect to the unambiguous terms of an ERISA plan. Lake v. Metro Life Ins. Co., 73 F.3d 1372, 1379 (6th Cir. 1996). "'Courts must give effect to all words, phrases, and clauses in interpreting a contract, avoiding interpretations that would render any part of the contract surplusage....'" CHS/Community Health Systems, Inc. v. Ledford, – F.Supp.3d –, 2016 WL 4506094, *4 (M.D. Tenn. Aug. 29, 2016), quoting Tabernacle-The New Testament Church v. State Farm Fire & Cas. Co., 616 Fed.Appx. 802, 808 (6th Cir. 2015).

### 2. The Meaning of the Policy

Against the backdrop of this legal framework, the dispute here is very narrow. There are really only two sentences which must be construed. The first is this:

> To receive the death benefit, a beneficiary must be living on the date of your death.

Under the undisputed facts laid out above, it is clear that Teresa Rings met this qualification, and Judy Rings does not argue otherwise. Where she and the Estate part ways is on the interpretation of this sentence:

> In the event of the simultaneous deaths of you and the beneficiary, the death benefit will be paid as if you survived the beneficiary.

Judy Rings says two things: that the deaths here were simultaneous because the order of death is impossible to determine, and that once it is concluded that David Rings survived Teresa, the death benefit cannot be paid to her (or her estate). The Estate, on the other hand, says that this language is irrelevant because David and Teresa Rings did not die at the same exact moment in time. That, it says, is what "simultaneous" means, and where that kind of "simultaneous" death cannot be proved, any policy provision dealing with simultaneous deaths simply does not come into play.

Unfortunately, the Policy does not define either the word "simultaneous" or the phrase "simultaneous death." Under ERISA, the Court must interpret the above provision "according to its plain meaning, in an ordinary and popular sense." Perez, 150 F.3d at 556. Is that meaning and sense the precise definition of the adjective "simultaneous," as the Estate contends, or is there an ordinary and popular sense of what is meant by the use of the words "simultaneous death" in an insurance policy? That is the question.

Judy Rings suggests that the phrase "simultaneous deaths" does have a commonly understood and distinct meaning beyond the meaning of the individual words "simultaneous" and "deaths" and that the Court should give effect to that meaning. According to

-8-

her, the phrase is intended to cover the specific situation presented here - deaths under circumstances where the order of death is unknown or unknowable - and it operates just as the policy specifies, deeming the policyholder to have survived the beneficiary.

The Court agrees that this reading of the provision is the most plausible one and the one most consistent with the plain meaning of the phrase "simultaneous death" as it is ordinarily used in the insurance context. It reaches this conclusion for several reasons.

First, commentators have said that "simultaneous deaths" has a commonly understood and specific meaning beyond the meaning of the individual words "simultaneous" and "death." For example, *Black's Law Dictionary* (10th ed. 2014) defines the phrase "simultaneous deaths" as:

> The death of two or more persons in the same mishap, under circumstances that make it impossible to determine who died first. SEE UNIFORM SIMULTANEOUS DEATH ACT; COMMON DISASTER; COMMORIENTES.

The related terms or phrases identified in this definition are themselves defined in *Black's* as follows:

> Uniform Simultaneous Death Act. A 1940 model statute specifying that if two or more people die within 120 hours of each other, each is considered to have predeceased the others. The Act simplifies estate administration by preventing an inheritance from being transferred more times than necessary. The Act was revised in 1993 and has been adopted in some form by almost every state. – Abbr. USDA. See COMMORIENTES.

> Common Disaster. An event that causes two or more persons (such as a testator and a devisee, or an insured and a beneficiary) to die at very nearly the same time, with no way of determining the order of their deaths, when the ownership of property depends on that order. See UNIFORM SIMULTANEOUS DEATH ACT; COMMORIENTES

> Commorientes. 1. Persons who die at the same

time, often of the same cause, such as spouses who die in an accident.  2.  *Civil law*.  The rule establishing presumptions of survivorship for purposes of succession regarding such persons.  See *simultaneous death* under DEATH; UNIFORM SIMULTANEOUS DEATH ACT.

Second, this interpretation underlies The Uniform Simultaneous Death Act and other state court simultaneous death statutes.  As one commentator has explained:

> Statutes may be expressly applicable to the distribution of the proceeds of insurance, and when this is so, the statutes commonly provide that when the chronological order of death cannot be determined, it shall be assumed that the beneficiary had predeceased the insured.  This is true of the Uniform Simultaneous Death Act of 1940, which provides that: "Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary, [except if the policy is community property of the insured and his spouse, and there is no alternative beneficiary, or no alternative beneficiary except the estate or personal representatives of the insured, the proceeds shall be distributed as community property under Section 4]."  It is also provided that the act "shall not apply in the case of wills, living trusts, deeds, or contracts of insurance wherein provision has been made for distribution of property different from the provisions of this act."  As amended in 1993, the Uniform Simultaneous Death Act provides that, subject to specified exceptions, "if (i) it is not established by clear and convincing evidence that one of two co-owners with right of survivorship survived the other co-owner by 120 hours, one-half of the property passes as if one had survived by 120 hours and one-half as if the other had survived by 120 hours and (ii) there are more than two co-owners and it is not established by clear and convincing evidence that at least one of them survived the others by 120 hours, the property passes in the proportion that one bears to the whole number of co-owners."
>
> These statutory rules do not preclude proof of actual survivorship, for their purpose is merely to provide

-10-

> that if there is no sufficient evidence that the insured and beneficiary have died otherwise than simultaneously, the proceeds shall be distributed as if the insured had survived, and are to supplant former presumptions of survivorship with effective, workable, and equitable rules, but only if there is no sufficient evidence to indicate that the insured and beneficiary died otherwise than simultaneously.
>
> When there is no proof that the beneficiary survived the insured, the net effect of the 1940 version of the Uniform Act is to pass the proceeds to the insured's estate if no alternate beneficiary is designated, or to the alternate beneficiary if such is designated. The Act may also trigger various policy provisions predicated on the beneficiary surviving, or predeceasing, the insured.

(Footnotes omitted) 4 *Couch on Insurance* §61:44 (3rd ed.).

It makes sense to the Court that the concept of "simultaneous deaths" serves a specific purpose - to provide an "effective, workable and equitable" solution to the circumstance where the order of death is unknown. The language of the Policy providing that, in the event of "simultaneous deaths" the death benefit will be paid as if the insured survived the beneficiary, is completely consistent with the language used in other settings to address this scenario.

Further, this interpretation of "simultaneous deaths" gives effect not only to the sentence in the Policy in which it appears but makes sense when construed with the earlier sentence which states that "To receive the death benefit, a beneficiary must be living on the date of your death." Under the Estate's interpretation, this sentence would cover almost every conceivable situation. So, for example, when the deaths occur in some indeterminate order but clearly on the same day, the first sentence makes the beneficiary the survivor - which is this situation. So also, when the deaths are clearly not simultaneous, and even if it is clear that the beneficiary died

first, as long as both deaths happened on the same day, the first sentence would also control. Further, it would still apply in a situation where the deaths occurred at exactly the same instant – which would necessarily mean they happened on the same day – but then there would simply be an irreconcilable conflict between that sentence and the "simultaneous death" sentence, with the Court left without any means of deciding which one actually dictates to whom the proceeds are paid. It is more consistent with the language used and the context of its use to conclude that the policy's intent, even if not precisely worded in this way, is to make the proceeds payable only to living beneficiaries, and to provide a rule for decision when it cannot be determined if the beneficiary actually survived the insured – that rule of decision being that she did not. This is consistent with the goal of providing a "workable, effective, and equitable" solution, but the Estate's interpretation is not.

For all of these reasons, the Court concludes that, because it is undisputed that the order of death of David and Teresa Rings is unknown and unknowable, under the terms of the Policy Teresa Rings was not an eligible beneficiary at the time of her death.

Based on the current state of the record, the Court's assumption is that, under this circumstance, according to the terms of the Policy, Judy Rings is entitled to collect the death benefit. The parties' briefing, however, suggests that other issues may exist preventing immediate payment. Further, according to the Court's docket, the Estate's counterclaims remain pending. This is so despite the suggestion from Minnesota Life's filings, including its motion to deposit funds, that the issues may be resolved. Consequently, the Court will schedule a status conference within 30 days to discuss any remaining issues.

## IV. Order

For the reasons stated above, the motion for partial summary judgment filed by Judy Rings (Doc. 45) is granted. The motion for partial summary judgment filed by the Estate of Teresa Rings (Doc. 47) is denied. The Clerk is directed to schedule a status conference within 30 days.

/s/ Terence P. Kemp
United States Magistrate Judge